UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RUSSELL W. TURPEN,<br>    *Plaintiff*, | ) <br> ) <br> ) | |
| *vs.* | ) <br> ) | 1:11-cv-00729-JMS-TAB |
| MICHAEL J. ASTRUE, Commissioner of the<br>Social Security Administration,<br>    *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Mr. Turpen applied for Disability Insurance Benefits and Social Security Income on Oc-
tober 24, 2008. [Dkt. 13-2 at 30, R. 29.] Mr. Turpen's application for benefits was denied ini-
tially and on reconsideration. [Dkt. 13-2 at 14, R. 13.] Mr. Turpen then filed a request for hear-
ing with an Administrative Law Judge. [Dkt. 13-2 at 14, R. 13.] Administrative Law Judge
("ALJ") Ronald Jordan held a hearing on October 10, 2010 and determined Mr. Turpen was not
disabled. [Dkt. 13-2 at 23, R. 22.] Mr. Turpen filed this action under 42 U.S.C. § 405(g), asking
the Court to review his denial of benefits after the Appeals Council denied review.

## I.   RELEVANT BACKGROUND

Mr. Turpen alleges he became disabled on September 30, 2007, [dkt. 13-2 at 14, R. 13],
from a variety of conditions including paranoia, anxiety and depression, [*id.* at 40-41, R. 39-40].
Mr. Turpen alleges his mental impairments stem from childhood. [*Id.* at 48, R. 47.]

Mr. Turpen presented evidence at the ALJ hearing showing a longitudinal history of men-
tal illness. Specifically, he presented testimony from his mother, Judith Ann Turpen, that he was
diagnosed with PTSD as a child after major trauma. [*Id.* at 49, R. 48.] Mr. Turpen also present-
ed testimony that he was discharged from the military in 1991 due to psychological problems at
the age of 19. [*Id.*; dkt. 13-10 at 40, R. 618.] The ALJ noted at the hearing, however, that the

1

record began in 2006 when Mr. Turpen was approximately 34 years old. [Dkt. 13-2 at 50, R. 49.] At the hearing, the ALJ granted 30 additional days to submit his military discharge records and records of prior hospitalizations. [*Id.* at 57, R. 55.]

From his impairments Mr. Turpen claims a wide range of symptoms including loss of sleep, mood swings, concentration loss, and social anxiety. [*Id.* at 19, R. 18.] Because of these symptoms, Mr. Turpen alleges he is unable to follow simple instructions for prolonged periods, misses work due to manic depressive episodes, and cannot function around large groups of people where he often becomes physically aggressive. [*Id.*] Mr. Turpen alleges he has been terminated on numerous occasions because of these symptoms. [*Id.*]

Mr. Turpen was 35 years old at the time he filed for disability benefits. [*Id.* at 22, R. 21.] He has at least a high school education, [*id.*], and work history extending at least 17 years, [dkt. 20 at 26]. During that period, Mr. Turpen reports having held 47 different jobs. [Dkt. 13-2 at 35, R. 34.] There was a break in work history for a 16-month period when Mr. Turpen was incarcerated for a sex offense. [Dkt. 13-2 at 50, R. 49.]

The ALJ noted that as recently as 2007, Mr. Turpen was able to maintain full time employment for approximately six months with Newco Metals. [Dkt. 13-2 at 34, R. 33]. A third-party HR report indicated Mr. Turpen worked there without attendance problems, completed short simple instructions, and worked well with other colleagues. [*See id.* at 20, R. 19.] Mr. Turpen was subsequently laid off from Newco Metals due to cutbacks. [*Id.* at 34, R. 33; dkt. 13-6 at 26, R. 186.]

Mr. Turpen's medical history includes records from two sources of psychiatric treatment. [Dkt. 13-2 at 19-20, R. 18-19.] First, Mr. Turpen participated and successfully completed mandatory sex offender group therapy after a 2003 sex offense conviction. [*Id.*] Second, Mr. Turpen

was treated at the Center for Mental Health ("CMH") in 2009 where he attended a total of seven outpatient group therapy sessions for depression and anxiety.  [Dkt. 13-9 at 3, R. 490.]  Mr. Turpen was discharged for cause from CMH after a disagreement with a CMH doctor who refused to change Mr. Turpen's medication.  [*Id.* at 2, R. 489.]  The CMH termination summary assigned Mr. Turpen a GAF score of 45 and listed four diagnoses, including Posttraumatic Stress Disorder, Pedophilia, Dysthymic Disorder, and Alcohol Dependence.  [*Id.* at 3, R. 490.]

## II.  STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJs credibility determination "considerable deference," overturning it only if it is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).  If the ALJ committed no legal error and substantial evidence exists to support the ALJs decision, the Court must affirm the denial of benefits.  Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits.  *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

[is] the claimant ... currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment ... one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively dis-

abling impairment, ... can [he] perform h[is] past relevant work, and (5) is the claimant ... capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).  After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments.  The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work.  20 C.F.R. § 416.920(e).

### III.   THE ALJ'S DECISION

The ALJ concluded that Mr. Turpen was not disabled after making several findings. [Dkt. 13-2 at 23, R. 22.]  At step 1, the ALJ found that Mr. Turpen had not engaged in substantial gainful work since the alleged start of his disability.  [*Id.* at 16, R. 15.]  At step 2, the ALJ determined that Mr. Turpen suffered from two severe impairments[1]: depression and anxiety.  [*Id.* at 16, R. 15.]  At step 3, the ALJ determined these impairments, either singly or in combination were not conclusively disabling because Mr. Turpen's impairments were not medically equal to the criteria of 12.04 and 12.06 listings.[2]  [*Id.* at 17, R. 16.]

At step 4, the ALJ applied the RFC analysis to determine where Mr. Turpen was capable of working.  [*Id.* at 18, R. 17.]  The ALJ found Mr. Turpen was able to do the full range of

---

[1] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. §416.920(c).

[2] Listing 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders) specify the criterion on which, if present, the Social Security Commissioner will find an impairment to be presumptively disabling.  To be presumptively disabling, the impairment must result in a) at least one persistent symptom and b) result in at least two of the following: restrictions in daily living, social functioning, concentration, or repeated episodes of decompensation.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

4

exertional work[3] but because of his depression and anxiety, was limited to work involving simple and repetitive tasks in a mild to moderately stressful work environment.  [Dkt. 13-2 at 18, R. 17.] The ALJ further explained that Mr. Turpen should have minimal contact with the public and only superficial contact with co-workers.  [*Id.* at 18, R. 17.]  Based on these findings and the testimony of the Vocational Expert ("VE"), the ALJ concluded Mr. Turpen was capable of performing his previous work as a metal sorter and furniture mover.  [*Id.* at 21, R. 20.]

Finally at step five, considering Mr. Turpen's age, education, work experience, RFC, and the testimony of the VE,  the ALJ determined that jobs existed in the national economy that Mr. Turpen could do, including laundry bundler, packer, and apparel sorter.  [*Id.* at 22, R. 21.]  Based on these findings, the ALJ concluded Mr. Turpen was not disabled.  [*Id.* at 23, R. 22.]

## IV.   DISCUSSION

As a global issue, Mr. Turpen argues that the ALJ's denial of benefits was not based on substantial evidence as required by law.  At Step 3, Mr. Turpen argues that the ALJ did not consider all applicable listed impairments.  At Steps 4 and 5, Mr. Turpen contends that the ALJ used a faulty RFC.  Those arguments, he says, entitle him to a reversal and award of benefits, rather than a mere remand.

### A.  Substantial Evidence Challenge

Mr. Turpen argues the ALJ's decision was not based on substantial evidence for two reasons.  First, he says the ALJ failed to examine all the evidence that was included in the record—specifically, military discharge medical records showing the presence of persistent and severe mental disorders.  [Dkt. 20 at 17.]  Second, he complains that the ALJ failed to fully develop the

---

[3] Exertional capacity addresses an individual's limitations and restrictions of physical strength. *See* 1996 SSR LEXIS 5 (SSR 1996).

record by failing to order a new consultative exam before concluding Mr. Turpen was not entitled to benefits. [Dkt. 20 at 18.]

### 1. Military Discharge Medical Records

Mr. Turpen contends that the ALJ's decision was not based on substantial evidence as required by law because the ALJ failed to examine evidence in the record. [Dkt. 20 at 15.] Specifically, Mr. Turpen argues the ALJ denied benefits without first reviewing military medical discharge records. At the ALJ hearing Mr. Turpen asked for and was granted 30 days to submit the records for the ALJ's consideration. [Dkt. 13-2 at 57, R. 56.] Mr. Turpen asserts that those records were submitted on time, as evidenced by their availability to the Appeals Council shortly after the ALJ's denial of benefits. [Dkt. 20 at 16.] Yet, Mr. Turpen argues these records were not discussed in the ALJ's denial letter or otherwise included in the list of exhibits that the ALJ reviewed. [*Id.*] Mr. Turpen argues this failure of the ALJ to consider and address the military records violates the rule that an ALJ must consider all evidence in the record and sufficiently discuss it to permit judicial review. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." (citations omitted)).

The Commissioner argues in response that there is no evidence the military records were properly entered into the record. In fact, the Commissioner points out that the fax showing submission of those discharge records was sent on January 26, 2011, 15 days after the ALJ's decision. [Dkt. 28 at 4; dkt 13-10 at 38, R. 616.] The Commissioner argues that if those records were not in the record, this Court cannot reverse an ALJ's decision based on evidence that was

not in front of the ALJ.  *See Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d

815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that

was before him."  (citations omitted)).  In the alternative, the Commissioner also argues even if

they were in the record, the ALJ had no obligation to review the records because they were cre-

ated when Mr. Turpen was 19 years old, several years before Mr. Turpen claims he became disa-

bled.  [Dkt. 28 at 5.]  The Commissioner contends that because of this, the military records are

not relevant, and the ALJ did not have to address them.  *See Wilder v. Apfel,* 153 F.3d 799, 804

(7th Cir. 2004).

The Court finds that an issue of fact exists as to whether Mr. Turpen submitted his mili-

tary records within the thirty days provided by the ALJ and thus as to whether those records are

properly within the administrative record.  On the one hand, the only reference to them in the

record is a fax dated January 2011, well outside the thirty-day period.  [*See* dkt. 13-10 at 36, R.

614.]  And the ALJ never referenced the records in the decision denying benefits, nor included

them in the list of exhibits.  [*See* dkt. 13-2  at 14-27, R. 13-26.]  But on the other hand, Mr.

Turpen's appeal to the Appeals Council clearly contends that he timely submitted them and ob-

jects to the ALJ's failure to discuss them.  [Dkt. 13-2 at 8, R. 7.]  He was also able to attach them

to his appeal, suggesting that he had the records handy and bolstering the inference that he had

them previously and thus would have submitted them.

The Commissioner has never decided (whether through the ALJ, the Appeals Council, or

otherwise) whether Mr. Turpen's submission of the records was timely.  This Court sits to re-

view the decisions of the Commissioner, not to make independent factual findings.  *See Schmidt

v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000) (explaining the appellate court on review is limited to

determining whether correct legal standard was applied and whether factual findings are support-

ed by substantial evidence).  It is not clear to the Court whether the ALJ did not discuss the medical records because he found them untimely, because he found them unpersuasive, or because he simply failed to review them.  The Court may not guess as to the ALJ's reasons.  *See Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision.  If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand." (citations omitted)).

The Court cannot find the error harmless, either.  The ALJ thought the records potentially probative enough of the issues under consideration to allow Mr. Turpen additional time to obtain them.  Furthermore, the records do provide longitudinal context for Mr. Turpen's mental conditions, which is relevant.  *See* 20 C.F.R.§ 404.1512(d).  Thus the Court cannot find that, assuming they were timely but overlooked, no reasonable ALJ could have reached a different decision on the record, as would be required to label the omission harmless.  *Cf. Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (explaining harmless error in the context of credibility determinations).

A remand is, therefore, required for the Commissioner to decide whether Mr. Turpen submitted the military records on time.  If so, the Commissioner must consider them.  If Mr. Turpen did not do so, the Commissioner need not consider them, for a failure to examine matter not within the administrative record is no grounds for reversal.  *See Eads*, 983 F.2d at 817.[4]

---

[4] In passing, the Commissioner suggests that because the medical records predated Mr. Turpen's alleged onset date, *Wilder v. Apfel*, 153 F3d 799 (7th Cir. 2004) somehow renders them irrelevant.  Nothing in the case stands for that proposition—and indeed the ALJ, whose opinion counts as opposed to post hoc argumentation, *see SEC v. Chenery Corp.*, 332 U.S. 194 (1947), thought the records relevant.  The only possible discussion in *Wilder* that the Commissioner may have attempted to reference was the discussion of the contemporaneous-corroboration requirement of allegedly disabling conditions during a period of insurance coverage.  *See Wilder*, 153 F.3d at 802.  No one has argued that issue on appeal here; Mr. Turpen has substantial contemporaneous corroboration of the severe ailments that the ALJ found exist.

### 2.   Second Consultative Exam

It is the ALJ's responsibility to develop a claimant's complete medical history for at least the 12 months prior to the month in which the application for benefits was filed.  20 C.F.R. § 404.1512(d).  In fulfilling that responsibility, ALJs have discretion to order consultative examinations for claimants.  *See* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." (emphasis added)).

Although the ALJ ordered one examination, Mr. Turpen argues the ALJ erred in not ordering a second.  In his view, a second consultative examination was required because psychiatric treatment reports and a consultative exam were stale, having predated the hearing by approximately two years.  [Dkt. 20 at 18.]  Without a fresh examination, Mr. Turpen alleges that the ALJ could not validly assess his current condition.  Mr. Turpen further argues the need for another consultative exam is supported by the ALJ's own comment in the decision that "[a]side from the mandatory group therapy . . . . the record contains only minimal evidence of psychiatric treatment," [dkt. 13-2 at 19, R. 18].  Instead of faulting Mr. Turpen for a gap in the medical records, Mr. Turpen says that ALJ had a duty to request another more recent consultative exam. [Dkt. 20 at 19 (citing *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (holding that the ALJ was not required to order an exam because the ALJ "was not commentating on a gap in the medical evidence that a consultative exam would have filled").]

In response, the Commissioner reiterates that there is no *per se* right to a consultative exam because whether or not to order one is left to the ALJ's discretion.  *See* 20 C.F.R. § 404.1512(d).  Further, the Commissioner notes there is no precedent or statute that requires con-

sultative exams to be conducted close to the hearing date.  [Dkt. 28 at 14.]  The Commissioner also responds that Mr. Turpen misapplies the rule in *Skinner*, because the case confirms that an ALJ is not required to order a new consultative exam when consultative examinations would not provide any additional needed medical information.  [Dkt. 28 at 5.]

After reviewing the record and the parties' arguments, the Court finds no abuse of discretion in the ALJ's decision to rely upon the original consultative examination rather than ordering an additional one.[5]  To the extent that the ALJ's comment about "the record contain[ing] only minimal evidence of psychiatric treatment," [dkt. 13-2 at 19, R. 18], identified a gap in the record, the ALJ fulfilled the obligation under *Skinner* to order an evaluation.  Having already ordered an evaluation, the ALJ was, however, completely free to find that the lack of treatment records undercut Mr. Turpen's subjective complaints.  *See Skinner*, 478 F.3d at 844 (holding that the ALJ was entitled to "highlight[] the lack of objective medical data to support Skinner's claimed disability and the predominance in the record of Skinner's own subjective complaints").  *See also Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (permitting ALJ to draw credibility inference from the fact that the claimant "never saw a mental health care specialist about her depression").  A more recent consultative evaluation would not have altered the ALJ's analysis on that point.  And while Mr. Turpen argues that his more recent records showed a decline in his mental health, he fails to show that the decline was any more severe than the previous deterioration in the record.  Thus, while the ALJ could have decided to order an additional consultative examination, the ALJ was not, as a matter of law, required to do so.[6]

_____

[5] Indeed, the Court notes that Ms. Turpen's counsel at the hearing did not request a new consultative examination.

[6] Given the passage of time, the Commissioner will have to decide on remand whether the original consultative examination has become stale such that a new examination is required.

### B.  Step 3 Challenge

When performing a Step 3 analysis, an ALJ is required to both discuss a listed impairment "by name" that is potentially supported by the evidentiary record and offer more than a "perfunctory analysis" of its potential applicability.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  If he fails to do so, the Seventh Circuit directs the district court to remand disability denials back to the Commissioner.  But a failure to specifically mention a listed impairment alone is not grounds for reversal where the opinion otherwise sufficiently discusses its potential application.  *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) ("As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here."  (citation omitted)).

Mr. Turpen briefly challenges the ALJ's analysis at Step 3:  Although the ALJ analyzed Listed Impairments 12.04 (affective disorders) and 12.06 (anxiety-related disorders), the ALJ did not specifically mention 12.08 (personality disorders).  [*See* dkt. 20 at 21.][7]  Additionally Mr. Turpen complains that the ALJ did not address his sexual disorder.

As the Commissioner points out, however, Mr. Turpen's arguments cannot succeed here.  Listed Impairment 12.08 requires a claimant to meet both "A" and "B" criteria identified in the listing.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listed Impairment 12.08 ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied.").  The "B" criteria in Listed Impairment 12.08 are the same as the "B" criteria in Listed Impairments 12.04 and 12.06.  *Compare id. with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listed Impairment 12.04, 12.06.  Because Mr. Turpen does not challenge the adequacy of the analysis of the "B" criteria in Listed Impairments 12.04 and 12.06, his challenge regarding Listed Impairment 12.08 necessarily

---

[7] So brief was the challenge at Step 3 that the Court could have deemed it waived for lack of cogent development but has decided to address it nonetheless.

fails; the ALJ has already determined that the "B" criteria do not apply.  And as for Mr. Turpen's sexual disorder, Mr. Turpen does not identify any other Listed Impairment that would cover it. The Court, therefore, finds no reversible error at Step 3 because any error that existed was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("But administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.  That would be a waste of time and resources for both the Commissioner and the claimant."  (citation omitted))

### C.  RFC Challenge

Next, Mr. Turpen cites several reasons why he believes the ALJ's RFC used at Steps 4 and 5 was flawed.  First, Mr. Turpen contends the ALJ erred by failing to consider evidence of other impairments in the RFC analysis.  [Dkt. 20 at 21.]  Second, he says the ALJ erred by finding that Mr. Turpen could work in a mild to moderately stressful work environment without first conducting a function-by-function analysis of Mr. Turpen's mental capacities.  [Dkt. 20 at 23.] Third, he objects that the hypothetical posed to the VE failed to account for Mr. Turpen's problems with concentration, persistence, and pace.  [*Id*. at 25.]  Fourth, Mr. Turpen argues the ALJ made erroneous factual findings based on the record.  [*Id*. at 26.]

#### 1.  The ALJ's Consideration of the Entire Record

An ALJ must consider all of the evidence in the record.  20 C.F.R. § 404.953(a).  Further, the ALJ must provide an explanation if a whole line of evidence is rejected.  *Herron v. Shalala*, 19 F.3d at  329, 333 (7th Cir. 1994) (collecting cases).  In deciding whether an individual is disabled, the ALJ must consider the combination of all impairments on the ability to work even if individually they do not rise to the level of a serious impairment.  20 C.F.R. § 404.1523.  The

burden is on the claimant to provide evidence of an alleged impairment.  20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence.").

In his challenge to the RFC here, Mr. Turpen faults the ALJ for not including limitations from PTSD, a pervasive personality disorder, and sexual disorder.  [*See* dkt. 20 at 21.]  In Mr. Turpen's view, the ALJ omitted limitations from those disorders after having only cursorily acknowledged their existence.  [*Id.* at 22.]

As to the failure to include any limitations specifically attributable to the disorders Mr. Turpen has identified, the Court finds no error.  The Commissioner specifically challenged Mr. Turpen to articulate any additional limitations that those disorders would have caused that are not already covered by the ALJ's limitations in the RFC, which controlled for depression and anxiety. [Dkt. 28 at 14.]  Mr. Turpen was unable to do so.  [Dkt. 29 at 7-9.]  Absent a claim of an omitted limitation, the Court can find no error in the ALJ's RFC.

As for the argument that the discussion of the disorders was cursory, the Court finds it unpersuasive as to the sexual disorder.  The ALJ discussed Mr. Turpen's sex offender group therapy at length.  [Dkt. 13-2 at 19, R. 18.]  As to the other conditions, the failure to have discussed them would have been grounds for remand, if there were any argument that the conditions necessitated additional RFC limitations.  But as noted above, no such claim was made here.

### 2.  Function-by-Function Analysis

Under applicable law, the RFC must identify the individual's functional limits before the RFC is expressed in terms of exertional levels of work.  *See* SSR 96-8p, 1996 SSR LEXIS 5, at *11 (S.S.A. July 2, 1996) ("[A] failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions.").  A function-by-function RFC analysis must consider a

claimant's ability to meet the physical, mental, sensory, and other requirements of work.  20 C.F.R. § 404.1545.  "The RFC analysis must include a narrative discussion describing how the evidence supports the conclusion [including] . . . . specific medical facts [and] nonmedical evidence . . . ."  SSR 96-8p, 1996 SSR LEXIS 5, at *19.

As narrowed in reply, Mr. Turpen argues that the ALJ's RFC finding "does not contain [a] 'maximum amount' with respect to each work-related activity, but rather, allows for subjective interpretation and, therefore, lacks a clear function-by-function evaluation of Plaintiff's mental capabilities."  [Dkt. 29 at 9.]

On review, the Court must "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it,"  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quotation omitted). And under that standard, the Court finds that the ALJ complied with the requirements of SSR 96-8p.  A reasonable person would understand, for example, what a mild-to-moderate level of stress in the workplace means; that ALJ's RFC finding uses sufficiently objective language to convey the ALJ's meaning.  Further that meaning was significantly explained in narrative form following the finding.  [*See* dkt. 13-2 at 18-19, R. 17-18.]  With respect to the "mild to moderately stressful work environment" in particular, the Court notes that RFC findings routinely use that limitation, without difficulty.  *See, e.g.*, *Perry v. Astrue*, No. 1:11-cv-00157-DML-JMS, 2012 U.S. Dist. LEXIS 35186, *9 (S.D. Ind. Mar. 15, 2012) (affirming decision containing that limitation).  Thus while Mr. Turpen challenges the substance of the RFC finding, its form is not defective with respect to its function-by-function description.

### 3. VE Hypothetical

When an ALJ poses a hypothetical question to a VE, that question must account for "all limitations supported by medical evidence in the record," including any limitations in "concen-

tration, persistence, and pace." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (quotation and citations omitted).  Generally speaking, restrictions to simple and repetitive work do not account for restrictions in concentration, persistence and pace, *e.g. O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2011).

Here, Mr. Turpen argues that the ALJ's hypothetical to the VE that limited him to "simple repetitive tasks, requiring minimal independent judgment and analysis to perform," [dkt. 13-2 at 53, R. 52], failed to capture the ALJ's finding that he has "moderate difficulties" with "concentration, persistence, or pace," [dkt. 1302 at 17, R. 16].[8]  Mr. Turpen argues his limitations are critical here because the record contains testimony that Mr. Turpen experienced a number of significant concentration difficulties, including a propensity to forget what he was doing and bouts of paranoia.  [Dkt. 20 at 26.]

Despite Mr. Turpen's arguments, the Court cannot find that Mr. Turpen is entitled to a remand on this issue.  As the Commissioner appropriately notes, a simple-and-repetitive-instruction limitation can satisfy the Seventh Circuit when "it [is] manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."  *O'Connor-Spinner*, 627 F.3d at 619.  [Dkt. 28 at 11 (invoking the "manifest evidence" exception).]  The Commissioner contends that such "manifest evidence"

---

[8] The first hypothetical to the VE reads as follows in the transcript:  "Assume an individual with the Claimant's age, education, and work experience. Who has no exertional limitations. However, due to a psychological impairment is limited to work involving simple repetitive tasks, requiring minimal judgment and analysis to perform. In a mildly to moderately stressful work environment.  Work goals on a daily basis should be fairly static and unchanging.  The individual should not be required to work with the general public to perform the functions of the job.  The individual should only have occasional superficial contact with coworkers and supervisors after the initial training period.  With these limitations could any past work be performed?"  [Dkt. 13-2 at 52-53, R. 51-52.]  The second hypothetical to the VE adds only the caveat that due to conflicts with co-workers, Mr. Turpen may be required to leave early an average of one day a week or three days a month.  [*Id.* at 53-54, R. 52-53.]

15

exists here:  the opinion of state reviewing psychologist that Mr. Turpen can "complete tasks on a sustained basis," [dkt. 13-7 at 121, R. 410], Mr. Turpen's self-reported ability to work with a friend, [dkt. 13-7 at 98, R. 387], and Mr. Turpen's successful, but brief, employment with Newco Metals—where a HR representative reported him as being "[a]ble to understand and carry out very short and simple instructions" during his employment [dkt. 13-6 at 27, R. 187].  The ALJ discussed those items in his opinion when deciding upon the simple-and-repetitive-instructions limitation.  [*See* dkt. 13-2 at 20-21, R. 19-20.]  While Mr. Turpen suggests that the person who filled out the Newco Metals form as a HR representative rather than someone with firsthand knowledge of his work abilities, the factual basis for that argument is not apparent from the record (counsel did not argue it at the hearing) and, even if it were, it would not so undermine the value of the form as to preclude as a matter of law the ALJ from relying upon it.

Because the record here falls within the exception to the general rule set forth in *O'Connor-Spinner*, the Court finds no reversible error with respect to the VE hypothetical.  Under the circumstances, no further refinement of the RFC was necessary to take into account Mr. Turpen's limitations in concentration, persistence, and pace.

### 4.  Claimed Erroneous Factual Findings

In reviewing a decision of the ALJ on a claim for Social Security disability benefits, "a Court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute its own judgment for that of the Commissioner."   *Lopez v. Barnhart*, 336 F.3d 535, 53 (7th Cir. 2003).  The Court's role is limited to determining whether the ALJ's factual findings are supported by substantial evidence, that is, whether reasonable mind would find the evidence adequate to support the ALJ's findings.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Further, the Court must also ensure that the ALJ builds the requisite logical

bridge from that evidence to the ALJ's ultimate factual findings conclusion.   *E.g.*, *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citation omitted)

Mr. Turpen argues that the ALJ incorporated three inaccurate factual findings into the RFC analysis that resulted in an incomplete or otherwise improper analysis.   The Court finds only one reversible error among those alleged.

First, Mr. Turpen says that the ALJ erred by concluding the Mr. Turpen had a "success-ful" work history despite his having held 47 jobs in 17 years, [dkt. 13-2 at 21, R. 20].  According to him,  such an employment track record cannot reasonably be considered "successful," because his average job lasted for only 4.3 months.  [Dkt. 20 at 26.]  Even the Commissioner, at least im-plicitly, concedes the inapplicability of the label "successful;" in the Response, the Commission-er does not defend the label.  [*See* dkt. 28 at 11.]  Instead, the Commissioner argues that the 17-year period is irrelevant and that the focus should be on Mr. Turpen's work history around the time of his disability application, which included what was by all accounts a successful stint with Newco. [9]   But the Commissioner cannot change tacks on appeal by making arguments that the ALJ did not make.  *Chenery*, 332 U.S. 194.  A remand is required so that the ALJ can either (1) explain how 47 jobs in 17 years could be deemed a "success" or, if not, (2) evaluate Mr. Turpen's claim in light of Mr. Turpen's longitudinal difficulties in maintaining employment over such period as the ALJ explains is relevant.

Second, Mr. Turpen argues that the ALJ should not have cited his successful sex-offender group therapy sessions as evidence that Mr. Turpen has only moderate difficulty in social set-tings, rather than the severe difficulty Mr. Turpen claims.  [Dkt. 13-2 at 21, R. 20.]  Given the penalty for noncompliance with treatment—that is, incarceration—Mr. Turpen says that the ALJ

---

[9] To the extent that Mr. Tupen critiques the ALJ for relying upon the report from Newco, the Court references its prior treatment of the report here and finds no error.

should not have considered it at all when assessing Mr. Turpen's ability to function in normal social settings. But Mr. Turpen has cited no authority for that proposition. Given the standard of review, the Court finds that the ALJ was entitled to consider the group therapy as some, though perhaps not conclusive, evidence of Mr. Turpen's social functioning.

Mr. Turpen's third claimed factual error is the ALJ's finding that "he works with a friend on a daily basis," which the ALJ also cited as evidence of only moderate social difficulty. [*Id.*] That finding, he says, relies upon a misstatement of Judith Ann Turpen's third-party function report, in which she indicated that her son "about once weekly . . . . goes with a friend to do 'scrapping'. . . ." [Dkt. 13-6 at 95, R. 255.] Once a week is not daily, he argues. Nonetheless as the Commissioner points out, nothing in the ALJ's opinion purports to ground the finding in Ms. Turpen's third-party function report, [*see id.*]. But Mr. Turpen himself reported, about one month before his mother, that although he has no "scheduled" activities, on a "typical" day he would work with his friend buying, cleaning, and selling furniture, [dkt. 13-7 at 98, R. 387]. Mr. Turpen was thus forced to change tacks in reply, arguing that having no set schedule is inconsistent with a "typical" day, that Ms. Turpen's more recent statement should be preferred, and that his work abilities with his friend should be discounted in light of his 47 jobs in 17 years. [Dkt. 29 at 14.] Those arguments about the weight of the evidence are insufficient to establish error given that the ALJ—not this Court—exercises the factfinding role. Judges and juries are entitled to credit parties' statements over the arguments of counsel, and many do. The ALJ could and did do so here.

### D. Reversal and Award of Benefits

The Court has authority to enter a judgment affirming, modifying, or reversing the Commissioner with or without remanding the cause for rehearing. 42 U.S.C. § 405(g). Mr. Turpen

contends that a reversal an award of benefits is appropriate in light of the arguments that he has made. But the Court has rejected all but two of them, concerning the military records and the ALJ's reference to a "successful" work history. As to both, a factual issue exists, thus making a reversal and award of benefits inappropriate. *Briscoe v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) ("[A]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." (citations omitted)).

To the extent that Mr. Turpen argues that a low GAF score alone entitles him to disability benefits, the Seventh Circuit has previously rejected that proposition. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." (quotation omitted)). The Court must, therefore, reject it here, too.

### V.   Conclusion

Because an issue of fact remains as to whether Mr. Turpen timely submitted his military records and, if so, the impact of those records on his disability application and because the ALJ failed to build a logical bridge as to how Mr. Turpen's work history can be viewed as "successful," the Court **VACATES** the denial of benefits and **REMANDS** this matter back to the Commissioner for further proceedings. Final judgment will now issue.

07/13/2012

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

19

Adriana Maria de la Torre
THE DE LA TORRE LAW OFFICE LLC
adriana@dltlawoffice.com